```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION
```

CARLA JACKSON, *Individually and*   *  
*as Mother and Natural Guardian*  
*of* S.M., *a minor*,   *

    Plaintiff,   *

vs.   *     CASE NO. 4:20-CV-56 (CDL)

WAL-MART STORES EAST, LP and   *  
TERRY DYER,  
  *

    Defendants.   *

O R D E R

Carla Jackson brought state law claims against Wal-Mart Stores East LP ("Wal-Mart") and its store manager, Terry Dyer, in the State Court of Muscogee County. After months of discovery, Wal-Mart removed the case to federal court on the basis of diversity jurisdiction. Jackson now moves to remand, arguing that Wal-Mart has not shown that the amount in controversy exceeds $75,000 and, even if it did, removal is nonetheless untimely (ECF No. 6). For the following reasons, the Court grants Jackson's motion to remand.

FACTUAL AND PROCEDURAL BACKGROUND

In 2017, a box of notebooks allegedly fell from a shelf onto the head of Jackson's minor son, S.M., at a Wal-Mart store. On April 18, 2019, Jackson brought negligence claims in the State Court of Muscogee County against Wal-Mart and Dyer to recover for

1

S.M.'s injuries stemming from the incident. Jackson's complaint did not specify the exact amount of money damages she sought or the specific injuries S.M. suffered. *See generally* Notice of Removal Ex. A, Compl., ECF No. 1-2.

However, these details were revealed on July 24, 2019, when Jackson responded to Wal-Mart's first wave of discovery. She explained that while at Wal-Mart, "a cumbersome, possibly already damaged box full of thick notebooks suddenly rained down directly upon 10-year-old [S.M.'s] head" and the box fell from "high up on the aisle's second-highest shelf." Notice of Removal Ex. F, Pl.'s Resp. to Def.'s First Interrogs. to Pls. ¶ 7, ECF No. 1-7 at 9. "[S]hortly after the box full of notebooks fell on [S.M.'s] head, [S.M.] began to cry and communicated to his mother that he was in a great deal of pain." *Id*. S.M. "remained in extreme pain for several minutes until his mother was able to take him to his pediatrician's office." *Id*. "Upon arrival at the Rivertown Pediatrics very soon following the aforesaid event, [S.M.] complained of injuries to his face and head, including severe headache as well as abrasions to his face and head where the metal wiring of the notebooks had scraped his face when the large box fell on his head." *Id*. "There, he was diagnosed with, among other things, severe headaches and a concussion." *Id*. "A few weeks later, [S.M.] suffered [a] seizure, a horrible event which [S.M.] had never experienced before the incident at Wal-Mart on July 10,

2017." *Id*. "[S.M.] continued to suffer from headaches, dizziness, sleeplessness, and other concussion symptoms for months after the incident and still has recurring headaches, pain, dizziness, and other post-concussive symptoms and after-effects to this day." *Id*. Jackson stated that "[she] . . . is seeking special damages in the amount of medical expenses she has incurred on behalf of [S.M.] as a result of [these] injuries. That amount currently is $10,859.28 . . . . Additionally, [Jackson] is seeking general damages (including pain and suffering) on behalf of [S.M.] in an amount to be proven at trial and to be determined in the enlightened conscience of a fair and impartial jury." *Id*. ¶ 31, ECF No. 1-7 at 31-32.

In its First Request for Admissions, Wal-Mart asked Jackson to admit or deny that her claimed damages would exceed $75,000. Notice of Removal Ex. H, Pl.'s Resps. to Def.'s First Requests for Admissions ¶¶ 1-10, ECF No. 1-9. Jackson responded that since discovery was in the early stages and given the current amount of S.M.'s medical expenses, she was "unable to state one way or another what amount she will ultimately seek from a jury in a trial of this matter or whether that amount will exceed $75,000." *Id*. ¶ 1; *accord id*. ¶¶ 2-10. Wal-Mart also sent Jackson a letter asking her to stipulate that the total damages sought were less than $75,000, and Jackson refused to agree to the stipulation.

3

Notice of Removal Ex. E, Stipulation Regarding Damages, ECF No. 1-6.

On November 4, 2019, Jackson provided Wal-Mart with a signed HIPAA Authorization, permitting Wal-Mart access to certain medical records and bills. But Jackson objected to Wal-Mart receiving records from S.M.'s psychologists or psychiatrists. Def.'s Resp. in Opp'n to Pl.'s Mot. to Remand Ex. H, HIPAA Compliant Authorization for the Release of Patient Information 2, ECF No. 10-8. Then, on January 28, 2020, Wal-Mart asked Jackson to supplement some of her earlier interrogatory responses. Jackson supplemented her earlier response about the amount of damages claimed by acknowledging that "[S.M.] was seen for follow-up appointments at Columbus Ambulatory Health Services on October 10, 2019, November 25, 2019, and is scheduled to be seen again at that office on February 25, 2019." Def.'s Resp. in Opp'n to Pl.'s Mot. to Remand Ex. G, Resp. to Def.'s Rule 6.4 Letter 5, ECF No. 10-7. She further stated that she "will seasonably supplement her discovery responses to include the additional medical records and medical billing records for [these] visits as soon as [Jackson] is able to obtain these records." *Id*. She later confirmed that she was in the process of obtaining these records, but "[t]hese are not big-ticket medical expense items." Notice of Removal Ex. J, Pl.'s Resp. to Def.'s Second Request for Admissions to Pl. ¶ 16, ECF No. 1-11. Jackson has not yet provided these records. She

4

claims she does not yet possess the records and soon after she agreed to provide them, the Supreme Court of Georgia declared a Statewide Judicial Emergency suspending all discovery deadlines. *See* Pl.'s Reply Br. in Supp. of Her Mot. to Remand Ex. A, Order Declaring Statewide Judicial Emergency (Mar. 14, 2020), ECF No. 11-1.

In January, Wal-Mart also sent Jackson a Second Request for Admissions which sought additional information about the amount of damages claimed in the case. On February 26, 2020, Jackson responded to the request by denying the following statements: (1) that she "is not seeking damages for any alleged traumatic brain injury"; (2) that "[n]o doctor or medical expert has determined that [S.M.] suffers from a traumatic brain injury as a result of the subject incident"; and (3) that "[n]o doctor or medical expert has diagnosed [S.M.] with a traumatic brain injury." Notice of Removal Ex. J, Pl.'s Resp. to Def.'s Second Request for Admissions to Pl. ¶¶ 7-9, ECF No. 1-11 ["2d Request for Admissions"]. However, Jackson still maintained that, given that discovery was ongoing, she "is unable to state one way or another what amount she will ultimately seek from a jury in a trial of this matter or whether that amount will exceed $75,000" and she "is unable to state one way or another whether she would accept an amount less than $75,000 to resolve this case." *Id*. ¶¶ 14, 19.

5

Wal-Mart removed the case to federal court on March 27, 2020, within 30 days of receiving Jackson's response to the Second Request for Admissions. Jackson now moves to remand the case, arguing that the removal was improper.

## DISCUSSION

For removal to be proper, the removing party must establish federal subject matter jurisdiction at the time the notice of removal is filed. *Leonard v. Enterprise Rent–A-Car,* 279 F.3d 967, 972 (11th Cir. 2002). Wal-Mart asserts that the Court may exercise diversity jurisdiction over Jackson's claims. To establish diversity jurisdiction, Wal-Mart must show two things: 1) complete diversity between the parties, and 2) an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a)(1). As the removing defendant, Wal-Mart bears the burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Williams v. Best Buy, Co. Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001); *see also* 28 U.S.C. § 1446(c)(2)(B).

Wal-Mart asks the Court to infer that the amount in controversy is satisfied based on the nature of Jackson's injuries. Wal-Mart points to Jackson's response to the Second Request for Admissions in which she indicated she would be "seeking damages for [an] alleged traumatic brain injury," 2d Request for Admissions ¶ 7, and that a "doctor or medical expert has determined that [S.M.] suffers from a traumatic brain injury as a result of the

6

subject incident." *Id*. ¶¶ 8-9.  Wal-Mart suggests that the Court can infer from this response that Jackson's damages for pain and suffering and past and future medical expenses will more likely than not exceed $75,000.  The Court need not decide whether the amount in controversy is satisfied based on this evidence because, even assuming that it is, Wal-Mart's notice of removal was untimely.

A defendant has 30 days after receipt of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" to file a notice of removal.  28 U.S.C. § 1446(b)(3).  When "the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed [$75,000]," as the parties agree is the case here, "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper.'" *Id*. § 1446(c)(3)(A).  To provide notice of removability, the "other paper" "must contain an unambiguous statement that clearly establishes federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 n.63 (11th Cir. 2007).

Wal-Mart asserts that the "other paper" that started its 30-day clock was Jackson's response to the Second Request for Admissions, which it received on February 26, 2020.  But that response did not put Wal-Mart on notice of any material fact

7

regarding the amount in controversy that Wal-Mart had not already learned from Jackson's response to its first wave of discovery on July 24, 2019.  Wal-Mart has known since July that S.M. suffered a concussion after a heavy box of notebooks fell on his head which resulted in a seizure and on-going post-concussive symptoms.  The only real difference in Jackson's February response is that these injuries were labeled "traumatic brain injuries."  But this labeling does not materially change the nature of the injury S.M. suffered or the amount of damages he would receive.  Concussions often fall under the umbrella of "traumatic brain injuries."  *See, e.g.,* Pl.'s Mot. to Remand Ex. A, Mayo Clinic Website, ECF No. 6-1 (defining a concussion as a type of "traumatic brain injury"); *id.* Ex. B, Centers for Disease Control and Prevention Website, ECF No. 6-2 (same); *id.* Ex. C, WebMD Website, ECF No. 6-3 (same).  And, there is no reason to believe Jackson intended to admit in February that S.M. suffered from any injury more severe than what was disclosed in July.

Wal-Mart attempts to distinguish the February response from the July response by arguing that it added a new detail: evidence that a *medical expert* drew a causal link between the notebook incident and S.M.'s brain injury.  Wal-Mart argues that before this, it only had lay witness testimony linking the two.  Therefore, it was not truly on notice that the case was removable until it procured this medical causation evidence in February.

8

But Wal-Mart points the Court to no authority suggesting that a defendant is not on notice of a case's removability for the purposes of the 30-day removal deadline until there is evidence of causation established by a medical expert. And the Court declines to follow such a rule.[1]

To put it simply, the information in the February response that Wal-Mart now relies on to establish the amount in controversy is not materially different from the information that was available to it in July. Therefore, assuming the nature of S.M.'s traumatic brain injury is sufficient to establish the amount in controversy requirement, Wal-Mart was first put on notice of this on July 24, 2019. It, accordingly, had 30 days from that day to file a notice of removal. Thus, its notice of removal, which was filed March 27, 2020, was untimely.

Wal-Mart maintains that even if its removal was untimely, its tardiness should be excused based on Jackson's bad faith in concealing the true amount in controversy during discovery. Wal-Mart's evidence of bad faith is woefully lacking. Jackson's counsel told Wal-Mart in the first discovery responses that S.M.

---

[1] Jackson contends that she provided Wal-Mart certified medical records in July from Rivertown Pediatrics showing that S.M. was diagnosed with a concussion resulting from the incident and, therefore, Wal-Mart had sufficient evidence of medical causation at that time. But, she points to no evidence showing this disclosure was made. Therefore, the Court declines to consider this argument.

suffered a serious head injury, i.e, concussion, when a box fell on his head from a substantial height.

## CONCLUSION

For these reasons, the Court grants Jackson's motion to remand (ECF No. 6). The clerk is directed to remand this action to the State Court of Muscogee County.

IT IS SO ORDERED, this 13th day of July, 2020.

S/Clay D. Land  
CLAY D. LAND  
U.S. DISTRICT COURT JUDGE  
MIDDLE DISTRICT OF GEORGIA
